MSWordDoc Word.Document.8 May it please the court, in this case, Mr. Trinkl seeks only a jurisdictional hearing because he has made a non-frivolous allegation that could establish, if proven true, that his separation was involuntary from the agency. He had over 14 years of impeccable federal service where he received high-quality ratings as an economist with the Department of Commerce. But in a series of very well-documented events, over about the course of a year, this led to his involuntary separation based on coercion, duress, and misinformation. You say involuntary, but he resigned. He resigned and he said there were terrible circumstances going on in the employment relationship, but it took almost a year for him to resign after those occurred. That doesn't look like he was coerced to resign. Your Honor, there are many events over the course of that year. Of course, there is the near physical attack that is described in great detail, but prior to that time there had been incidents of workplace violence that he had witnessed from these individuals. He made some reports up and he knew that those would lead to recriminations in his evaluations and performance evaluations. He waited many months into August of the next year to receive the full report of the investigating authorities, and it is only after that, after two months lapse after that time, that he finally submitted an involuntary resignation. He very clearly on the resignation form said, I am resigning because this workplace is no longer safe for me due to the harassment and the physical and emotional and indeed harassment that he had experienced. He submitted that paperwork in October 2014, but the final separation didn't take effect until January 10. So you are looking at about a six month difference. Should we take that into account in deciding whether the review below was adequate or not? You are right, Your Honor. There is some delay between his separation papers. That was October 31st, so by all accounts it was probably November, December and then ten days into January. Three months. Yes, let's say three months. During that time he was nevertheless undergoing performance evaluations and the like. He had been told by the HR department that that involuntary separation could be pulled at any time up until the day of his formal separation. So he was during that entire time pleading, as you will see in the record, for a transfer away from these individuals. He had no intention of fully separating if he could at all avoid it. But as the events continued, even during this three month interval, he found that there was no opportunity for him to even go forward. So he did involuntarily separate at that time and pursued further recourse with the courts. As we said, there were several errors in the Board's decision in determining that it was not involuntary. The first being that the Board isolated all of these individual instances. The complete record has many instances and many well documented events and the Board isolated those and picked them off one by one to suggest that a reasonable person wouldn't have found that too egregious. However, the court is very clear that this must be taken for totality, that a reasonable person experiencing all these things, if there are allegations, non-frivolous allegations, then the totality of those circumstances may lead one to involuntarily resign. What does that mean, the totality? Does that mean that they must account for all of the occurrences or is there some other, does that go to a different type of analysis as opposed to piecemeal inquiry? I recognize, Your Honor, that in writing opinions, courts have to address things in seriatim fashion. That is how opinions are written very frequently. But in this case, there are no linking statements whatsoever, such as given events X and Y, a reasonable person might have thought Z and such and such. Or given event Z, it's not unreasonable that this occurred after. There is nothing linking up all of these individual events that the court chose to piecemeal address. Moreover, the Board entirely omitted in an abuse of discretion many events that were alleged in the pleadings non-frivolously, such as, for example, the Board abuses discretion by entirely excluding from its analysis many of the other relevant background factors, such as years of high-quality service. This is part of the texture and the context and the background that the court has asked for in performing this analysis. When Mr. Trinkle had 14 years of high-quality and incident-free service, it becomes very suspicious for even a reasonable person why there is suddenly a spiral over the course of a year that led him to exit the agency prematurely. In Braun, for example, this court noted that a 12-year span of good behavior was a significant factor to consider as part of the totality. In Shoaff, this court also noted that 12 years of high-quality performance must, at a minimum, be considered also to place the activity and inactivity immediately preceding the retirement into its proper context. And so by omitting that entirely from the Board's analysis, it lost this background facts and context that would have helped them understand what a reasonable person in that year interval, really that pressure cooker, would have been thinking given the years of impeccable service. There were other things that were entirely missed by the Board. For example, the Board didn't discuss bad blood with the supervisors reaching all the way back to 2007. It didn't discuss numerous requests for transfer. The highly charged emails that occurred during that one year after the near-physical event to the date of separation, those are all throughout the joint appendix. There are even allegations that the staff nurse was documenting health issues due to workplace stress and that he was hiding in the nurse's office from these individuals as they would come down the hall. All of these things would have been sussed out in an evidentiary hearing. You could have had the nurse, for example, testify. You could have had these two supervisors testify to what happened in that room that day. They deny that anything ever happened. They deny the meeting even took place. What is the relief that you're requesting? You're objecting to the dismissal at the threshold that resignations are presumed to be involuntary. And so you're asking for a trial of this same question, isn't that right, before the MSPB, a hearing on whether or not the circumstances were such that sufficiently intolerable that resignation was required. And then what happens? Either they say, no, a reasonable person would not have retired and therefore you lose, or a reasonable person would have or could have retired. In either case, what is the benefit? What is the recovery? Restoration to employment having retired? Your Honor, the request at this point of Mr. Trinkle is much more modest. He in fact recognized the proper standard when he was writing his own pro se briefs below. He said, all I want is the opportunity to put this under oath and to have the demeanor and the credibility of all those involved assessed in an oral hearing, an evidentiary hearing on jurisdiction. If after that hearing there is no way to go forward because jurisdiction is indeed at that point determined to be insufficiently involuntary, then he of course would walk away at that point. So he's not requesting full reinstatement at this point. He's requesting a much more threshold analysis occur. That's my difficulty. On the theory, accepting your position that the MSPB acted with adverse presumptions or whatever and should have granted a hearing, then the hearing will have one or two of two results. Either a reasonable person would have retired under the circumstances, or a reasonable person would not have retired. On either of those outcomes, where are you? If the board determines after hearing the evidence that a reasonable person would not have retired, then Mr. Trinkle would certainly have his rights in ordinary course to pursue that. At this point, he's only asking for that preliminary step. Certainly, if it does go forward and they determine that it's time to then pass to the merits, then reinstatement is certainly within the realm of possible after that merits. I didn't see that that was requested. Was that there as a requested relief from the MSPB? It is requested. It was requested in the form of a transfer, but continued employment nonetheless. He involuntarily separated because he had no way of proceeding forward reasonably with this group of individuals. He did anticipate fully continuing on in his federal career, but at this point, he needed that jurisdictional hearing to bring forward the evidence and draw on where there is a question as to voluntariness of the petitioner's retirement. The petitioner makes a non-frivolous allegation the evidentiary hearing is required. He is asking for precisely that. Moving on, there are some questions, if you'll permit. There are some questions with respect to the finding of this to be too remote. For example, this was the near physical attack heard about 12 months, 14 months before his separation. As a legal matter, it is improper to view it only as a snapshot, to take one thing right before separation and view that as the totality. The court has instructed very clearly that while remote things may eventually have less probative value, it is nonetheless an evidentiary hearing that helps determine that. In Turbin, the case that is often cited by the government, indeed remote events were given less probative value, but that was in the context of this jurisdictional hearing that we're requesting. Counselor, how do you propose that we review whether the board considered the totality of circumstances? Do we look for certain transition words, as you were suggesting, or for the board, considering all the information before us? Is that what we're to look for? Again, I appreciate that it must be more than magic words. We're not necessarily looking for that, but we are looking for the recognition that there were many things that transpired here, and it has a compounding and a dynamic effect. Just striking down one at a time, event by event, isn't enough. Even if we look only at the near physical attack, what effectively the board is saying is that a near physical attack where a person wasn't actually touched is per se not enough to have an evidentiary hearing. That would be a broad rule. Men and women, young and old, perhaps the more wise thing to do in this circumstance is to have that evidentiary hearing. Find out really how bad that was. He was cornered in a room. He was shouted at in his face. He was told to grab him and stop him from leaving. While it didn't actually consummate in an actual assault, he felt very threatened, and for many, many months recorded this throughout his emails that he would not meet with them again face-to-face. That, in and of itself, could rise under the right evidentiary hearing to sufficient that would cause a reasonable person to involuntarily separate if there could be no change in his position under these individuals. Also, it was said it was too remote that the event back in 2007 where the same individual had actually physically shoved someone, and that was witnessed by Mr. Trinkle, that that couldn't have affected his thinking or his eventual involuntary retirement. Again, this is a matter that could be considered in an evidentiary hearing where people are under oath and demeanor could be witnessed. Let's hear from the other side. We'll save you rebuttal time. Mr. Fung. Good morning. May it please the Court. The MSPB correctly dismissed the petitioner's appeal for lack of jurisdiction because he failed to make a non-frivolous allegation that he was constructively removed from his employment. I'd like to address one thing really quickly, which is the Board did twice actually state it was addressing the totality of the circumstances in the initial decision, both at the end of the decision stating specifically it was considering the totality of the circumstances, and earlier on appendix page 17, it states that considering all the actions, he hasn't demonstrated how that would coerce him to resign. On your mind, what does totality of circumstances mean? If there's 10 events that happen that the Board considered all 10 events, whereas what it seemed to be hearing from your opponent is that you look at, you get those 10 circumstances and see how they weigh against each other and the resulting of that. With the totality of the circumstances analysis is essentially considering all the allegations put forward by the appellant or the petitioner now and weighing or determining whether or not assuming all those allegations are true, a reasonable person would feel they had no choice but to resign from their employment under those circumstances. A reasonable person in the petitioner's circumstances simply would not feel like they had no choice but to resign. As you noted, Judge Rayner, there was a long period of time between the last documented event that he alleged, which I think was a near physical attack, and then the retirement application, which happened in October 2014. There seems to be some basis to the argument that the Board took an event and looked at it and said, this can't amount to or cause somebody to involuntary resign. Then looked at the other thing and said, well, this is too remote. This one could not have done that. Whereas your opponent says, when you consider them all together, then it could create and there could be a non-frivolous allegation being made towards involuntary retirement or separation. Well, the Board did consider them all together, as it stated. It considered the totality of the circumstances and stated, looking at all these actions, the petitioner has not or the appellant has not demonstrated how they would coerce him to resign. What the Board's analysis was doing was effectively providing more detail as to the weakness of the individual claims. As Petitioner's Counsel pointed out, it's a necessary function in describing the overall environment is to describe each element making up the environment. Otherwise, it would be nothing more than just listing the allegations and saying, sorry, not good enough, which I suspect would be equally unsatisfying to the petitioner. Would you say that if he resigned the week after this near physical altercation, that would be quite a different story? I can certainly say it would be a stronger allegation in those circumstances under this court's precedent from Turbin saying the period of time is relevant for a coercive effect of an event. A year from the event certainly weakens the causal effect of that event, and then another three months. But within the interim, they witness another event going on involving some sort of physical activity. In that circumstance, that would be up for the Board to weigh. That was not before the Board here, and I can't opine that would be an advisory opinion from the Board. I was just trying to check the temporal argument that you're making. Yes. I mean, certainly more events would strengthen his claim, but that's not what happened here. In this circumstance, what the record demonstrates is there was a near physical attack in November 2013, and then nothing except possibly an investigation in the interim. By his own account, he was possibly trying to avoid them for a year, and then he submits a retirement application in October 2014, but still does not retire at that time and still waits another three months before he finally retires, demonstrating that this wasn't an intolerable work environment. It was, at best, maybe an unpleasant work environment, but it was something he was clearly able to tolerate a little bit or enough to stay in the workplace. You haven't heard much about the peanut gallery remark. When did that occur in this time span? Well, you haven't heard much about it because it's unclear as to when it happened. It may have happened before the near physical attack sometime in the fall of 2013, before November. But I would like to address that for a different reason, which is that the petitioner waived his discrimination claims in order to remain in this court after the Supreme Court's decision in Perry. So, to the extent that the negative character of any of the events making up this intolerable work environment are derived solely from discrimination, the peanut gallery... But nobody said that. This is really what I'm trying to understand the MSPB's position, that a hearing was denied, which means that at the threshold, accepting all reasonably plausible representations as true as you must at that stage, that there's absolutely no way that this combination of circumstances, because the hearing was denied, it's not what would or would not have been admitted at the hearing with taking the complaint. With all of the circumstances, the performance improvement plan, the situation, the conditions, all of the events which we are being told about, the MSPB's position was giving all reasonably plausible credibility to these allegations. There's no way that a reasonable person would have retired. And are you telling me that the evidence supports that? We're not talking about a final decision. What we're given is that you're not going to get a chance to make your case. We're not going to let you in the door because there's no way you can prevail no matter what, giving you all the benefit of the doubt. And that seems to me peculiar on the representations that are made, unless the MSPB also at that stage is able to show that there's no way these representations could even be made. No, that's not, Your Honor, to the last part. That's not what the MSPB is saying. We're not saying these could not be made. We are assuming, and not even reasonably plausibly true allegations, we're assuming all allegations are true at the non-privilege stage. And what we state, or what we are holding, is that no reasonable person in these circumstances would feel compelled to resign. It's a very high bar that very few individuals ever actually reach because it's an incredibly demanding standard, as this Court has stated. You have to feel as if you have no choice but to resign. And clearly, he felt he had some choice because he worked for another year. It sounds like you're saying that at that threshold point, you have to prove the merits. No, Your Honor, what we're saying, because a merit, and it becomes complicated because the merits become inextricably intertwined at a jurisdictional hearing, but what we are saying is that assuming his allegations are true, a reasonable person still wouldn't feel compelled to resign. A jurisdictional hearing would be held if he made allegations that if he could prove them true, that they actually happened, such as a near physical attack, that a reasonable person would feel compelled to resign in those circumstances. That's different from what I thought I heard you say at the beginning of your argument. Which was? That he hadn't proved this and that, and you consider this and that, and it wasn't enough. That is the merits. Now, is the MSPB's position that all that's appropriate, as for any complaint, is a plausible statement of facts to be proved? To reach the jurisdictional hearing, yes. And if I stated earlier that it needed to be proven, that was a misstatement, and I apologize. It's not a matter of jurisdiction. They decided on the merits. There's no way you can prevail, so you're not going to get a hearing. They didn't say we don't have jurisdiction to hear your case. I apologize, Your Honor, for interrupting, but we are not saying, we are saying that if you were to prove these true, you still would not show that you were coerced to resign. A merits determination is one. But they must accept when it's true. Yes. What do you mean if you prove that these are true? What we are saying is that if you prove them to be true at the merits hearing, show that they actually happened, you still wouldn't have been coerced to resign. We're accepting them as true, and because we're accepting them as true and looking at them as true, looking at them as true, they still would not coerce somebody to resign, so you have not made a non-frivolous allegation of jurisdiction. But I'd like to go back to what I was raising with Judge Lurie earlier. Because he waived discrimination to remain before this court, anything such as his medical condition that he alleged the agency failure to accommodate by not transferring him must all be considered waived before this court, and to the extent that those heighten his allegations at all or strengthen his claim that he should have felt or a reasonable person would feel compelled to resign under those circumstances, those should be considered waived. The peanut gallery comment appears to be an age discrimination based comment, so that comment also should be considered as waived before this court and should no longer be considered in a determination as to whether or not a reasonable person would resign. Discrimination because of age, but you're now telling us that it is inappropriate to consider the viewpoint, the sensitivities of an employee. For his specific discrimination complaints, yes. If he wants to remain alleging his discrimination complaints, that now needs to be reviewed in district court. He was discriminated against because he didn't like to be pushed around? He's discriminated against because of his medical condition of PTSD or his age. He also had a claim for discrimination because of age. It looked to me as if that was what was being waived. He later on, and the board addressed this in the final order, claimed that the transfer or the failure to transfer him was a claim or was a failure to accommodate his medical condition, which would be a violation of the Rehabilitation Act. That would also be waived. Are you saying that the peanut gallery comment wasn't reviewed at all? No, it was reviewed by the board, but after the board reviewed this case, the Supreme Court issued PERI, which states that all discrimination allegations, even jurisdictional determinations... Why was that a discrimination claim? Because it was allegedly based on his age, the peanut gallery rumor. There was no facts brought out as to what was meant? Well, according to the petitioner, he was sitting with a group of older individuals and they were referred to collectively as the peanut gallery, and he contended to the EEOC, or to this agency's EEO office, that that was based on age. What could that add to the creation of this hostile environment that forced him out and not have to peg it as an age discrimination allegation? Well, it can still be viewed independently as just a negative comment, but if it's negative... But that's what I wonder, whether it was viewed independently here or not. And it seems to me that you're saying that it was not viewed independently. It was viewed only within the context of age discrimination. It was viewed as he put forward to the board, and he included it to the board as part of his EEO complaint. So it was viewed as an age discrimination related comment because it was included in his EEO complaint. If this court has no further questions, then we ask that the decision of the MSPB be affirmed. Thank you. Mr. McCorkadale. Judge Newman, I'd like to quickly circle back to one of your questions on ultimate remedy. If he did prevail in an evidentiary hearing and jurisdiction attached, he could go forward on the merits. And we would assume that since he did request transfer numerous times, that he could be reinstated and considered for a transfer at that point. But certainly that's well down the road of what we're asking for here, that threshold jurisdictional analysis in an evidentiary hearing. The government continues to hang everything on that one date, November 13, 2013, when the near physical attack occurred. After that time, in April, Mr. Trinkle was dealing with the security officers to discuss this. He was dealing with his higher-ups in April. There are emails to all these effects. Certainly by August of 2014, he'd received the investigation that said, we're not going to act on this. That was the investigation result in 2014. Only two months later, October 31, he formally submitted his resignation. Still during that time, he was holding out hope beyond hope for a transfer. So those further events still continued to play in in December. And then in January 2015, he eventually separated. So that year was replete with further incidents and further thinking. But ultimately he realized, and he describes this as the dam bursting, when he realized he was going to get no support or help from reporting up, that it was a continuous and unredressed pattern of behavior. And in Bates, the case that we cite, that was enough also. So that entire lapse of time where he sees that he's not getting any recourse or relief, and he finally recognizes that these memos are coming out where they're not going to help him, that's what drove him to his ultimate involuntary separation. Just lastly, just to put this back into perspective, Cahill very recently addressed the non-frivolous standard. In the context of whistleblowers, but the case law that Cahill cited was for constructive separation like we're dealing with Hill here in the Garcia opinion, for example. And it talks about a non-frivolous allegation being only sufficient that it could establish retirement was involuntary, and not that it has to at that point. And so a non-frivolous allegation, the CFR helps us understand what that means. It's a three-part, more than conclusory. And I would submit that Mr. Trinkle, in extensively and cogently in his pro se briefing, 35 pages, explains the state of constant coercion, distress, and misinformation. He supports that with dozens and dozens of pages of contemporaneous emails and documents showing that this was going on. These allegations are not conclusory by any definition. The second part of a non-frivolous allegation in the CFR says plausible on its face. And there is nothing implausible here about allegations of workplace harassment. Call it schoolyard bullying, call it what you may, it's not implausible to see that these supervisors were systematically persecuting a subordinate. And that is a continuous and unredressed pattern for this victim. Many would endure that for 14 months trying to make that improve, trying to call out for help, but it didn't improve. And when he realized that, he knew that he had to call it quits. Not unreasonably so. The third element is material to the legal issues in this appeal. If Mr. Trinkle's allegations are played out and go to an evidentiary hearing, he claims that they'll support a showing of abuse and recrimination that occurred that rendered his separation involuntary. Mr. Trinkle may have been a gadfly to the agency over that last year. He was raising irregularities, he was noting things, he wasn't just rolling over and going away. But they didn't have a right to squash him the way they did and to swat him aside. He should have been reviewed under proper processes of law, and that would require a jurisdictional analysis in an evidentiary hearing at this point. And I thank you for your time. If there are no other questions, we will yield. Thank you. Thank you. Thank you both. The case is taken under submission.